UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN HAROLD and<br>LONNIE BRYANT<br>v.<br><br>LIEUTENANT ANDRE RILEY;<br>SERGEANT ADRIAN ALMODOVAR,<br>MAJOR KEVIN DURBIN,<br>CAPTAIN CHARLES PHILSON,<br>LT. TROY ROGERS,<br>LT. ERIC NORWOOD;<br>COL. JAROD VERRET; and<br>LT. MICHAEL COLLINS | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CIVIL ACTION NO: DIV:<br><br><br>JUDGE<br><br><br><br>MAGISTRATE JUDGE |

*************************************************

**COMPLAINT FOR DAMAGES/FRENZY BEATING EHCC**

Now into court, through undersigned counsel, comes **JOHN HAROLD** and **LONNIE BRYANT** for all injuries incurred as a result of the actions of defendants in deliberate indifference to constitutional rights in their failure to protect plaintiff, in violation of the Eighth Amendment to the U.S. Constitution for failure to protect, failure to intervene, and other wrongs or other causes as follows:

1.

**Jurisdiction**

The jurisdiction of this Honorable Court is invoked Pursuant to 28 USC § 1331 "Federal Question" and accordingly plaintiff specifically seeks relief pursuant to the 28 USC § 1983 for injuries, damages and other losses as well as supplemental jurisdiction pursuant to 28 USC § 1367 over all state law claims.

2.

**Venue**

Venue is proper pursuant to 28 USC § 1391 (b)(D(2) in that the Plaintiffs and Defendants resided and were located in Iberville Parish at the time of the incident and the events or omissions giving rise to the claims herein occurred at EHCC which is within this judicial district.

3.

**EXHAUSTION**

The incident took place on January 9, 2017. All Administrative Remedies were initiated and appealed to Second Step. JOHN HAROLD's ARP was assigned EHCC 2017-69 and it has advanced to 2nd step. The deadline for the DOC to respond have run, which allows the inmates to proceed to the next step, which is filing suit.. LONNIE BRYANT reached 2nd step through ARP EHCC 2017 - 38 on June 30, 2017.

4.

**Parties**

**PLAINTIFFS:**

**JOHN HAROLD**, DOC 494721, a major, who was incarcerated in the Elayn Hunt Correctional Center where he was attacked and injured, but who is currently housed at Raymond LaBorde Correctional Center.

**LONNIE BRYANT** is a major who is currently incarcerated in the Elayn Hunt Correctional Center, DOC #443697, and who was an inmate at that facility where he was attacked and injured.

**DEFENDANTS:**

**LIEUTENANT ANDRE RILEY**, is a major sued in his individual capacity, who is /was employed by the Elayn Hunt Correctional Center and who was acting within the course and scope of his employment during all material times herein and under the color of state law and amenable to service of process at Elayn Hunt Correctional Center on any employee of suitable age and discernment.

**SERGEANT ADRIAN ALMODOVAR** is a major sued in his individual capacity, who is/was employed by the Elayn Hunt Correctional Center and who was acting within the course and scope of his employment during all material times herein and under the color of state law and amenable to service of process at Elayn Hunt Correctional Center on any

employee of suitable age and discernment.

**MAJOR KEVIN DURBIN** is a major sued in his individual capacity, who is/was employed by the Elayn Hunt Correctional Center and who was acting within the course and scope of his employment during all material times herein and under the color of state law and amenable to service of process at Elayn Hunt Correctional Center on any employee of suitable age and discernment.

**CAPTAIN CHARLES PHILSON**, is a major sued in his individual capacity, who is /was employed by the Elayn Hunt Correctional Center and who was acting within the course and scope of his employment during all material times herein and under the color of state law and amenable to service of process at Elayn Hunt Correctional Center on any employee of suitable age and discernment.

**COLONEL JAROD VERRET**, is a major sued in his individual capacity, who is /was employed by the Elayn Hunt Correctional Center and who was acting within the course and scope of his employment during all material times herein and under the color of state law and amenable to service of process at Elayn Hunt Correctional Center on any employee of suitable age and discernment.

**LT. TROY ROGERS** is a major sued in his individual capacity, who is/was employed by the Elayn Hunt Correctional Center and who was acting within the course and scope of his employment during all material times herein and under the color of state law and amenable to service of process at Elayn Hunt Correctional Center on any employee of suitable age and discernment.

**LT. ERIC NORWOOD** is a major sued in his individual capacity, who is/was employed by the Elayn Hunt Correctional Center and who was acting within the course and scope of his employment during all material times herein and under the color of state law and amenable to service of process at Elayn Hunt Correctional Center on any employee of suitable age and discernment.

**LT. MICHAEL COLLINS** is a major sued in his individual capacity, who is/was employed by the Elayn Hunt Correctional Center and who was acting within the course and scope of his employment during all material times herein and under the color of state law and amenable to service of process at Elayn Hunt Correctional Center on any employee of suitable age and discernment.

5.

GENERAL ALLEGATIONS

On January 9, 2017, JOHN HAROLD and LONNIE BRYANT were both Department of Corrections inmates housed at the EHCC, both were housed in Beaver 2, D-Tier, Cell #14.

6.

On January 9, 2017, LIEUTENANT ANDRE RILEY, SERGEANT ADRIAN ALMODOVAR, MAJOR KEVIN DURBIN, CAPTAIN CHARLES PHILSON, LT. TROY ROGERS, LT. ERIC NORWOOD, and LT. MICHAEL COLLINS, all majors sued in their individual capacities, were each employees of the Department of Corrections employed at the EHCC and under color of state law at all times that they were in the Beaver 2 dormitory, walkway outside the Beaver dormitories, Transportation Van; walkway outside of the ATU where the A--Building is located, and inside the ATU.

7.

On January 9, 2017, MAJOR KEVIN DURBIN was the shift leader and over the tactical unit.

After an incident involving JONATHAN JACOBS, LT. MICHAEL COLLINS believed that LONNIE BRYANT had caused another inmate to throw human waste on him.

8.

On January 9, 2017, around 5 p.m., Sgt. Wilson the Beaver 2 -C and D Tiers

sergeant activated his beeper for medical after JOHN HAROLD became dizzy and fell out of his bed in the Beaver2, D-Tier, Cell #14.

9.

EMT SERGEANT ADRIAN ALMODOVAR arrived to assess the medical.

10.

LONNIE BRYANT was placed in restraints and removed from the cell. JOHN HAROLD was placed in restraints. SERGEANT ADRIAN ALMODOVAR began searching the cell instead of assessing the medical condition. LONNIE BRYANT asked SERGEANT ADRIAN ALMODOVAR why he was searching the cell instead of providing medical. At that point, SERGEANT ADRIAN ALMODOVAR exited the cell, confronted and began yelling at LONNIE BRYANT.

11.

While on camera, SERGEANT ADRIAN ALMODOVAR pulled out a baton and threatened LONNIE BRYANT with physical injury. SERGEANT ADRIAN ALMODOVAR and EMT went into the cell with the Tactical Team. SERGEANT ADRAIN ALMODOVAR had previously had an altercation with LONNIE BRYANT and he should not have come into the cell during the cell extraction.

12.

SERGEANT ADRIAN ALMODOVAR then called for assistance. MAJOR DURBIN, LIEUTENANT ROGERS and LIEUTENANT RILEY responded to the call and diffused the confrontation with LONNIE BRYANT. MAJOR DURBIN then commanded the correctional officers to throw everything out of LONNIE BRYANT and JOHN HAROLD's cell as well as to snatch JOHN HAROLD's "Rosary" off of his neck.

13.

The rosary was broken off after which SERGEANT ADRIAN ALMODOVAR stated "the Mother F@#$ will be alright!" The restraints were removed from JOHN HAROLD who

sat up on the floor against his bed as all guards exited the cell. Moments later, JOHN HAROLD called for rank and LT. RILEY responded.

14.

JOHN HAROLD asked LT. RILEY why his Rosary was snatched off of his neck and broken as he uses it to pray when he needs to. MAJOR DURBIN was called back down the Tier. JOHN HAROLD asked him why he had been handled so roughly and his Rosary broken. MAJOR DURBIN smiled and pointed his finger at JOHN HAROLD and then he and LT. RILEY exited the Tier. LONNIE BRYANT and JOHN HAROLD did not expect any more violence.

15.

LONNIE BRYANT, who was confused, was returned to the cell after JOHN HAROLD came to the bars to be restrained. Moments later, MAJOR DURBIN came back down the Beaver 2, D-Tier along with LT. NORWOOD with one set of restraints and stopped in front of Cell #14, smiled and then sprayed JOHN HAROLD and LONNIE BRYANT with a chemical agent and then walked off. Both JOHN HAROLD and LONNIE BRYANT were overcome by the fumes and they coughed and gagged.

16.

CAPTAIN JOHNSON, who was working on the night shift came down the D-Tier and stopped in front of Cell #14 and began coughing and asked what was going on, because it was obvious that neither JOHN HAROLD nor LONNIE BRYANT was being disruptive and the scene did not make sense.

17.

After Captain Johnson exited the Tier, moments later MAJOR DURBIN led his Tactical Team down the Beaver #2, D-Tier to Cell #14.

18.

MAJOR DURBIN standing outside the cell then sprayed another large amount of

chemical agent into the cell and then gave the signal to open the cell door.

19.

CAPTAIN PHILSON, LT. RILEY, LT. ROGERS, LT. COLLINS, LT NORWOOD AND MASTER SERGEANT ALMODOVAR entered the cell and rammed JOHN HAROLD to the ground with the shield. LT. COLLINS sat on top of JOHN HAROLD and began punching him in the face. MASTER SERGEANT ALMODOVAR shackled JOHN HAROLD and began beating his body with a metal tactical stick. LT. COLLINS then turned JOHN HAROLD over and cuffed him behind his back. The entire Tactical Team joined in the fray beating JOHN HAROLD. More chemical was applied at close range to the body of JOHN HAROLD.

20.

MASTER SERGEANT ALMODOVAR beat LONNIE BRYANT with the baton in his leg, ankle and back and punched LONNIE BRYANT twice in his head while in the van and sprayed LONNIE BRYANT with chemical again while in the van.

21.

The Defendants continued to beat JOHN HAROLD and LONNIE BRYANT after they were fully restrained and laid face down on the floor of the cell by kicking, punching and beating them with tactical sticks repeatedly in what may be described as a frenzy. JOHN HAROLD played dead in hopes the beating would stop.

22.

Two of the Tactical Team members waked LONNIE BRYANT out of the cell as the others continued beating JOHN HAROLD for some time.

23.

Then, the Tactical Team carried JOHN HAROLD by the chains of the handcuff and shackles to the Beaver 2 walkway where said tactical team dropped JOHN HAROLD multiple times on his face and chest during which time the tactical team would beat him

with closed fists, tactical sticks, and kick JOHN HAROLD repeatedly every time they dropped him in route to the Transportation Van. The beating and spraying of the chemical agents resumed once JOHN HAROLD was thrown inside of the Transportation Van.

24.

When they arrived at the ATU, JOHN HAROLD was thrown from the Transportation Van and stomped in his back and a Tactical Team member informed the rest of their team that a camera was in the area. Once inside the ATU, the Tactical Team members beat JOHN HAROLD in the penis with a tactical helmet as others punched him repeatedly in the face.

25.

Tactical Team members removed JOHN HAROLD'S restraints and bloody clothing and put JOHN HAROLD in clean clothing sized too small and then replaced the restraints. The beating then resumed all the way back to Beaver 2 where JOHN HAROLD was left for dead on the cold floor in a puddle blood.

26.

Captain Johnson made his rounds and noticed that JOHN HAROLD was bleeding badly and had serious injuries. Captain Johnson made sure JOHN HAROLD and LONNIE BRYANT were showered. Neither inmate received medical attention.

27.

LONNIE BRYANT had serious pain to his arm, ankle, and body. His head was swollen. He has injuries to his head and right arm, right elbow, lower back, right hip and right leg.

28.

Colonel Jarod Verret the commander and transportation van driver failed to intervene to stop the assault and batteries and he mislead investigators after the incident.

29.

No photographs were taken of LONNIE BRYANT's injuries. There was an investigation and photographs were taken of JOHN HAROLD.

30.

The Constitution, statutes, rules and regulations enacted to protect inmates were disregarded.

31.

La. R.S. 15:829, which allows the Secretary of the Louisiana Department of Public Safety and Corrections to enact rules and regulations governing inmates and guards, provides that corporal punishment of inmates is forbidden. See also, lac 22:3309 (B) and see Department Regulation No. c-02-006 (6)(b)(c)(d).

> A. The secretary of the Department of Public safety and Corrections shall prescribe rules and regulations for the maintenance of good order and discipline for inmates sentenced to the legal custody of the department whether housed in local or state facilities, which rules and regulations shall include procedures for dealing with violations thereof. A copy of such rules and regulations shall be furnished each inmate. **Corporal punishment is prohibited.**

32.

Beating an inmate who is in restraints and begging for mercy is per se unreasonable behavior.

33.

The Regulations enacted by the Secretary include Department Regulation no. c-02-006 (12), addressing the use of chemical agents, as follows:

> A. Chemical agents... shall not be used as punishment under any circumstances and may be used against an offender... only in the following circumstances:
> 1) To quell a riot and/or prevent loss of life, serious injury to persons(s) and/or extensive destruction of property;
> 2) To quell a disturbance that could lead to a serious situation which m ay jeopardize the safety, security and good order of the institution; or
> 3) To regain control of the institution or part of it.
>
> B) The use of chemical agents, ... is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. . . .

C) A determination for corporate or mass use of chemical agents, . . . shall be made by the warden or designee . . .

D) Chemical agents, . .. shall not:

1) Be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile **unless the offender continuously defies orders to come to the bars of the cell**, a determination for use under these circumstances, or against an individual offender, should be made by the highest ranking supervisor on duty in the area where the incident is occurring.34.

In the alternative, these guards have similarly attacked other inmates.

35.

In the alternative, where the guards or other guards may have committed the same acts on other inmates that is unknown at this time, but where same may be shown, or where ratification of the actions of guards may be shown, or violation of or failure to implement any applicable policies or procedures, there may be other persons at fault where same constitutes a deliberate indifference to the constitutional rights of an inmate/ detainee. All rights are reserved herein to name additional defendants pending discovery.

36.

It was unreasonable for Defendant(s) to use force on Plaintiffs when neither was resisting and when neither was no resisting or attempting to flee or, otherwise, commit any crime.

37.

Use of force was unnecessary and excessive to any need and/or there was no need for use of force under the 4th and 8th Amendments and the circumstances presented.

38.

Whether there was other policy and practice in place at the EHCC pertaining to the use of force, which policy was violated and which caused or contributed to the injuries, is unknown at this time.

39.

One or more of the Defendants acted in a manner that was in wanton or reckless

disregard or with malice or willfulness to cause injury and violate constitutional rights.

40.

Violating numerous inmates rights and failure to follow rules and regulations implemented for the protection of inmates constitutes deliberate indifference.

41.

The following claims for relief are pled collectively and in the alternative.

42.

**INJURIES**

The Plaintiffs suffered acute injury and multiple serious and prolonged injury which include but are not limited to those to their arms, necks, backs, ribs, back of legs, head, eyes, and face, broken and cracked bones and teeth, discomfort, humiliation, burning of respiratory system, pain and suffering, mental and emotional injury, medical and pharmaceutical expenses, and lost wages.

43.

**FIRST CLAIM FOR RELIEF**

SECTION 1983 VIOLATION OF CIVIL RIGHTS

Plaintiffs seek relief pursuant to 42 U.S.C. § 1983.

Under the color of State and local law, Defendants violated the Plaintiffs 4th, 8th and/or 14th Amendment right to be free from use of corporal punishment, unnecessary and/or excessive force while being seized and/or detained by the Defendants.

44.

Guards are prohibited by state law from using corporal punishment on prisoners. La. R.S. 15:829.

45.

Use of corporal punishment was prohibited and/or force was unnecessary and/or excessive to any need and/or there was no need for use of force under the 4th or 8th

Amendment and the circumstances presented.

46.

The guards violated multiple state laws and rules and regulations.

47.

The conduct of the Defendants was extreme and outrageous.

48.

Defendants acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights.

49.

**1983 BYSTANDER LIABILITY**

Each Defendants were present during the beating and had a duty to intervene and not stand by as a bystander and allow the violation of Eighth Amendment rights. Defendants each have bystander liability for failing to intervene and protect the inmate Plaintiffs.

50.

**SECOND CLAIM FOR RELIEF COSTS AND ATTORNEY FEES**

Plaintiffs seek relief in the form of attorney's fees and cost pursuant to 42 USC § 1988 and punitive damages pursuant to 28 USC § 1983.

Wherefore, Plaintiffs prays that the Defendants be cited to appear and answer and that after resolution of this matter that this Honorable Court enter Judgment in favor of the Plaintiffs against the Defendants with legal interest from the date of demand as follows:

a. Physical pain and suffering;

b. Physical injuries;

c. for emotional and mental distress, pain and suffering, humiliation, embarrassment and loss of employment opportunities;

d. Medical, hospital and pharmaceutical bills and services past, present, and

future;

e. inconvenience;

f. Lost wages;

g. All litigation expenses;

h. For attorneys fees and for costs as may be allowable by law; and

j. For such other relief that the Court may deem just, equitable, or proper.

Respectfully submitted:

s/ Donna U. Grodner

Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX (225) 769-1997
Dgrodner@grodnerlaw.com